UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARBOR BEVERAGE COMPANY, INC.,

       Plaintiff,

v.

       Case No. 14-cv-12907
       HON. GERSHWIN A. DRAIN

PHILLIPS FARMS, LLC
*d/b/a* MICHAEL DAVID WINERY,

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER [#8]

**I.    INTRODUCTION**

On July 24, 2014, Plaintiff Arbor Beverage Company ("Arbor Beverage"), filed the instant action. Plaintiff alleges two counts against Defendant, Phillips Farms, which is doing business as Michael David Winery ("MDW"): (1) breach of its 2004 exclusive distribution agreement ("2004 Agreement"), and (2) declaratory judgment respecting the non-arbitrability of the claim.

Presently before the Court is Defendant's Motion to Dismiss or Alternatively to Transfer [#8], filed on November 14, 2014. On December 29, 2014, Plaintiff filed a Response [#15]. On January 15, 2015, Defendant filed a Reply [#16] to Plaintiff's Response.

On January 16, 2015, Arbor Beverage filed a motion for leave to file a surreply [#17]. Upon review of this fully-briefed motion, the Court found that Arbor Beverage's grounds were proper and granted its motion to file the sur-reply. As a result, Arbor Beverage's surreply is contemplated as part of this opinion and order.

For the reasons stated below, the Court denies Defendant's motion.

1

## II.     FACTUAL BACKGROUND

MDW is a family-owned wine supplier with its principal place of business in Lodi, California. Arbor Beverage is a wine wholesaler with its principal place of business in Scio Township, Washtenaw County, Michigan.

On June 1, 2004, Michael David and Arbor Beverage entered into the 2004 Agreement. Under the 2004 Agreement, MDW granted Arbor Beverage exclusive distribution rights for the sale of its wine. The 2004 Agreement granted such distribution rights covering the following seven counties: Washtenaw, Livingston, Jackson, Lenawee, Macomb, Oakland, and Wayne. The Parties refer to this area as Arbor's Exclusive Territory. The 2004 Agreement did not include either an arbitration clause or a forum selection clause.

Between 2004 and 2005, Arbor Beverage solicited at least 10 orders with MDW. MDW's invoices did not contain any terms or conditions. Between 2006 and 2007, Arbor Beverage placed seven orders with MDW. The accompanying invoices contained some terms and conditions. These terms and conditions included neither an arbitration clause nor a forum selection clause.

Since December 2007, Arbor Beverage has submitted 48 purchase orders. With accompanying invoices, and since December 2007, MDW placed another set of terms and conditions on the front of its Arbor Beverages invoices. The Terms and Conditions state the following:

> **Except to the extent that there is a written distribution agreement to the contrary between Distributor and MICHAEL DAVID WINERY** and except to the extent any particular term is prohibited by the law of the state in which distribution under these Terms occurs, these Terms and Conditions govern all purchases and sales of product ("Product(s)")

2

> between them.  Distributor's submission of a purchase order for any Product constitutes agreement to them. … [1]
>
> California law governs these Terms and Conditions.  Except to the extent prohibited by the law of Distributor's state, any dispute related to anything referred to in these Terms and Conditions, WINERY, WINERY Products, performance under or cessation of this distributorship, or Distributor's rights to continue distributing WINERY Products, shall be resolved by arbitration in San Francisco under the Comprehensive Rules and Procedures of JAMS, or its successor then in effect. … The parties consent to the jurisdiction of the State and Federal Courts in San Francisco, where any judicial action regarding these Terms and Conditions, or any aspect of the parties' relationship or any purchases or sales of WINERY products shall be filed, including, without limitation, any action to compel arbitration, or to confirm, modify or enforce the arbitral award.[2]

*E.g.*, Def.'s Mot. Dismiss, Ex. A-1 (ECF No. 8-2, Pg ID 162) (emphasis in original).[3] Since June 17, 2010, the front of the invoices have stated, in capital letters:[4]

> BY PAYMENT OF THIS INVOICE YOU WARRANT THAT YOU HAVE READ AND AGREED TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE[5] OF THIS INVOICE.

*Id.* Def.'s Mot. Dismiss, Ex. A-1 (ECF No. 8-2, Pg ID 177).

---

[1] The Court takes note that a similar statement, which read, "Subject to execution of mutually agreed upon distribution agreement," also appeared on the front of the invoice until December 2, 2009, and ceased to appear on the subsequent invoice, dated June 17, 2010. *See, e.g.*, Def.'s Mot. Dismiss, Ex. A-2 (ECF No. 8-2, Pg ID 221, ¶¶ 1, 9).

[2] In addition, the Court hereby advises the parties' to either remain consistent with its use of one version of the 2007 Terms and Conditions, or by clearly attributing excerpts through either proper citation (including indicating, i.e., the exhibit's page number), or by reference through the associated invoice date, throughout the course of the proceedings and in *all* documents. In addition, all excerpts should be *correctly* attributed.

[3] The Court takes note of Defendant's declaration that, "[w]hile the text of those terms and conditions changed slightly in 2012, they have consistently had a clause calling for arbitration of all disputes in San Francisco, California." *See* Def.'s Mot. Dismiss, Ex. A.

[4] The Court notes that the warning began to appear in capital letters, beginning with its invoice dated June 17, 2010. Def.'s Mot. Dismiss, Ex. A-1 (ECF No. 8-2, Pg ID 177).

[5] The Court will assume that as of June 17, 2010, the Terms and Conditions began to appear on the back side of the Arbor invoices.

The back of each Arbor invoice stated: "Distributor or Buyer's submission of a purchase order for any MDW VINEYARDS product shall constitute agreement to these Terms and Conditions…"

Several years after the formation of the 2004 Agreement, it came to Arbor Beverage's attention that another wine wholesaler was distributing MDW wines in its exclusive territory. CKL Corporation, doing business as Imperial Beverage ("Imperial"), is also a Michigan wine wholesaler. In June 2009, through a written contract ("the 2009 Imperial Agreement"), MDW granted Imperial the right to offer and sell its brands of wine in portions of Arbor's Exclusive Territory, on a dual basis. Arbor Beverage was not notified as to the existence of the 2009 Imperial Agreement until March 2014. Until March 2014, Arbor Beverage claims that Imperial led it to believe that Imperial had not been granted such rights.

On July 24, 2014, Arbor Beverage filed the immediate cause of action against MDW for breach of contract, seeking compensation for the loss of alleged exclusive distribution rights. Arbor Beverage contends that the 2004 Agreement governs the cause of action and challenges the validity of the 2007 Terms and Conditions. The Parties now request that the Court examine the validity of the arbitration and forum selection clauses.

### III. LAW AND ANALYSIS

#### A. Standard of Review

##### 1. Defendant's Motion to Dismiss

Rule 12 of Federal Rules of Civil Procedure governs motions for judgment on the pleadings. Defendant contends that the case should be dismissed under either Rule 12(b)(1), 12(b)(3), or 12(b)(6). The Rules permit a party to assert a defense for lack of subject-matter

4

jurisdiction, improper venue, and failure to state a claim on which relief can be granted, respectively. *See* FED. R. CIV. P. 12(b)(1), 12(b)(3), 12(b)(6).

### a. Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction. The Defendant's Motion to Dismiss is a factual attack on the court's subject matter jurisdiction. In reviewing the motion:

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. Cir.), *cert. denied*, 513 U.S. 868 (1994)]. The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

*Ashley v. United States*, 37 F.Supp.2d 1027, 1029 (W.D. Mich. 1997). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)).

### b. Dismissal for Improper Venue Under Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal if venue is either "wrong" or "improper". *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 134 S.Ct. 568, 574 (2013). In the *Atlantic Marine* decision, the Supreme Court stated that under Rule 12(b)(3), "a forum-selection clause does *not* render venue in a court "wrong" or "improper" under § 1406(a) or Rule 12(b)(3)" *Id.* (emphasis added).

5

> The Supreme Court further stated, that "[w]hether venue is "wrong" or "improper" depends exclusively on whether the court on which the case was brought satisfies the requirements of federal venue laws. … If a case falls within one of § 1391(b)'s districts, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). Whether the parties' contract contains a forum-selection clause has no bearing on whether a case falls into one of the specified districts."

*Id.* at 573. Title 28 U.S.C. Section 1391 governs venue generally. *Id.*

### c.     *Dismissal for Failure to State Claim Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*.

### 2.    **Defendant's Motion to Transfer to the U.S. District Court for the Northern District of California**

In the alternative, transfer of venue is governed by Title 28, Section 1404 of the United States Code. Section 1404 states:

6

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

When a defendant files a motion to transfer under *forum non conveniens*, and based on a forum selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atlantic Marine*, 134 S.Ct. at 575. In addition, when a motion to transfer is grounded in either a forum selection or choice of forum clause, courts use an inquiry that is different from its standard inquiry. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31, 33 (1988); *see also Atlantic Marine*, 134 S. Ct. at 581. Under the *Atlantic Marine* analysis, the plaintiff's choice of forum is not given deference. *See, e.g.*, *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 668 (E.D. Mich. 1996). Instead, the party defying the forum selection clause bears the burden of proving that the bargained-for forum is warranted. 134 S.Ct. at 581-82.

### B. Analysis

The Court first examines whether transfer of the matter is required. If transfer is required, then it would be proper for the courts of the Northern District of California to answer the question of whether the case then requires dismissal on the grounds that Defendant proposes. If the Court determines that transfer is not required, then it follows that dismissal is also not warranted.

### 1. A review of Defendant's motion to transfer, as an initial matter, requires an examination of the validity of the forum selection provision.

In its motion, Defendant argues that the case should be transferred on *forum non conveniens* grounds because the 2007 Terms and Conditions included on Arbor Beverage's

7

invoices contained arbitration and choice-of-law clauses. Plaintiff argues that the 2007 Terms and Conditions are not valid, and therefore, the arbitration and choice of law provisions within the sales invoices are also not valid. Plaintiff instead contends that the 2004 Agreement governs the substance of this case.

Defendant cites *Security Watch* for the proposition that the forum selection clauses contained in the 2007 Terms and Conditions are valid. *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999) ("[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). Defendant also cites *Wong* as the legal inquiry that applies to the question of whether the forum selection clauses are valid. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.2d 1227, 1229 (6th Cir. 1995)). *Wong* provides a three-part test for determining whether a forum selection clause is enforceable.

In citing *Security Watch* and the *Wong* test, however, Defendant fails to correctly frame the legal issue, which was noted in the Complaint. The legal question at play in this motion is a preliminary one: whether the contract that contains the forum and choice of law provisions were "bargained-for" at all; the question is not whether the forum selection provision in and of itself is enforceable. The *Wong* inquiry applies to the latter question only because it presumes that the contract, which contains such clauses, has been properly negotiated or bargained for and, as a result, "represents the parties' agreement as to the most proper forum.[6] *See Stewart Org.*, 487 U.S. at 31, 33. In other words, the *Wong* inquiry evaluates the enforceability of the forum

---

[6] Whether such terms in the Terms and Conditions such as, "Distributor's submission of a purchase order for any Product constitutes agreement to them. WINERY does not agree to, and is not bound by, any other terms or conditions stated anywhere by Distributor, unless expressly agreed to in a writing, signed by an authorized representative of WINERY. No conduct or oral comment by WINERY constitutes consent to or acceptance of such provisions," were negotiated or bargained for is a question of validity and enforceability. *See* Def.'s Mot. Dismiss, Ex. A-2 (ECF No. 8-2, Pg ID 221, ¶ 1). The inquiries are, however, different.

8

selection clause, not the validity of it. *See Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, (2003) ("[Sections 2 and 3 of the Federal Arbitration] Act assume the existence of a valid contract. They merely provide for enforcement where such a valid contract exists."); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 394 (6th Cir. 2003) ("Before a court can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists[;] [a]n arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated..."); *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008) ("the district court was correct that Kentucky law governs the initial question of whether the agreements containing the forum selection clauses were valid").

The Court cannot reach the question of enforceability until it reviews whether the 2007 Terms and Conditions are valid.

### 2. The forum selection provisions in the 2007 Terms and Conditions are invalid.

This matter represents a "battle of the forms" challenge. Plaintiff contends that the parties' 2004 Agreement is the governing contract whereas Defendant contends that its 2007 Terms and Conditions govern the cause of action.

Section 436.1305(3)(m) of the Michigan Liquor Control Code of 1998 is central to resolving this controversy. The statutory provision contemplates the structure for the business relationship between a wine wholesaler (Arbor Beverage) and wine supplier (MDW). The statutory provision states:

> A supplier shall *not*... [r]equire by a provision of any agreement or other instrument in connection with the agreement that any dispute arising out of or in connection with that agreement be determined through the application of any other state's laws. Any supplier or wholesaler aggrieved by any dispute arising out of or in connection with an agreement governed by this act shall have the right to file an appropriate action consistent with this act in any court in this state having venue.

9

MICH. COMP. LAW § 436.1305(3)(m) (emphasis added).

The statute needs little interpretation. Arbor Beverage is a wine wholesaler, and MDW is a wine supplier; the parties decided to engage in a business relationship within the state of Michigan. This type of relationship is expressly contemplated by a Michigan-state statute, which contains prohibitive choice of law and forum rules. Although the terms of the statute state that, "a supplier shall not… require by a provision of any agreement or other instrument in connection with the agreement," that any dispute be determined by another state's laws, Defendant concedes that furthering the business relationship required that Plaintiff accepted its 2007 Terms and Conditions.

The 2007 Terms and Conditions contained a forum selection clause, favoring the state of California. While the statutory provision does not bar arbitration,[7] it does limit resolution to the state of Michigan. Even if the 2007 Terms and Conditions did govern the resolution of this dispute, it only provides for arbitration in San Francisco. It appears, therefore, that MDW's the forum selection provision in the 2007 Terms and Conditions is statutorily barred and is thus invalid.

MDW contends, however, that by continuing to place purchase orders for its brand wines and accepting delivery, Arbor Beverage waived its rights under this provision of the Michigan law. MDW emphasizes that Arbor Beverage placed 48 orders subsequent to the 2007 Terms and Conditions. In addition, MDW further contends that the 2007 Terms and Conditions were properly negotiated and bargained for, effectively replacing the 2004 Agreement.

The history of the parties' transactions, beginning in December 2007, is irrelevant and, thus, requires no evaluation. The statute highlights that the supplier bears the initial

---

[7] State statutes that bar arbitration are themselves preempted by the Federal Arbitration Act. *See Abela v. Gen Motors corp.*, 669 N.W.2d 271, 278 (Mich. Ct. App. 2003).

responsibility of not requiring such forum selection provisions. Thus it follows that a wholesaler does not possess the opportunity to waive its rights under the statute.[8]

Furthermore, MDW concedes as much. In its 2009 Imperial Agreement, MDW acknowledges the governance of § 436.1305, despite the reservations in contractual language, stating: "If, and only to the extent that, the provisions of Michigan law [Section 436.1305],… govern the sale of products by Supplier to Distributor, then the terms of this Agreement are deemed modified to conform to those provisions." Likewise, Defendant at no point argues the applicability of the Michigan law. As a result, the Court denies Defendant's Motion to Transfer and does not reach the question concerning the enforceability of the forum selection clauses.

Defendant premised both its dismissal motion as well as its Section 1406(a) transfer motion entirely on the validity of the forum selection clause.[9] The Court has found, however, that the choice-of-forum clause is invalid, as it provides for arbitration in San Francisco and under the laws of California.[10] *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 883 (6th Cir. 2002) (held that compelling arbitration was invalid in New York yet valid in Michigan because while the contract provided for venue in both forums, an addendum prohibited dispute

---

[8] The 2004 Agreement states that, "[i]t is the policy of Michael David Winery to conducts its business in accordance with the laws and regulations of the jurisdictions in which it does business. To that end, you agree that you will represent Michael David Vineyards products in the highest legal standards." It is clear that the parties originally bargained for the state of Michigan to govern the law and forum of its conflicts and controversies. Likewise, MDW's 2009 Imperial Agreement, "[t]his Agreement shall be governed by the law of the state of Michigan, may not be amended except by a writing signed by both parties, and shall supersede any and all prior discussions between the parties concerning the subject matter." This indicates that MDW's policy mentioned in the 2004 Agreement may, indeed, remain intact.

[9] Defendant argues that: the existence of a forum selection clause and/or an arbitration clause is grounds for dismissal under Federal Rule of Civil Procedure 12(b)(1); because the arbitration clause cited San Francisco as the venue to govern disputes, this was grounds for dismissal under Rule 12(b)(3); a motion to dismiss on the basis of an arbitration clause may be brought for failure to state a claim under Rule 12(b)(6) and *Langley v. Prudential Mortg. Capital Co., LLC*, 549 F.3d 365, 369 (6th Cir. 2008); the arbitration clause allows transfer actions for improper venue under Section 1406(a).

[10] Additionally, the 2007 Terms and Conditions state that it "shall be subject to the terms of any mutually executed written Agreement and MDW." The only Agreement, under this description, that fits the bill is the parties' 2004 Agreement.

resolution outside of the state of Michigan). For this reason, the Court denies Defendant's Motion to Dismiss.

**IV.  CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss or Alternatively to Transfer [#8] is **DENIED**.

IT IS SO ORDERED.

Dated: February 4, 2015

/s/Gershwin A Drain
HONORABLE GERSHWIN A. DRAIN
UNITED STATES DISTRICT COURT JUDGE

12